## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

ALEXANDER MELO,              :      CIVIL NO. 3:15-CV-1272

        **Petitioner**              :      **(Judge Mannion)**

        **v.**                          :

**NANCY A. GIROUX,**              :

        **Respondent**              :

## MEMORANDUM

Petitioner, Alexander Melo ("Melo") filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging a judgment and conviction imposed in the Court of Common Pleas of York County, Pennsylvania. (Doc. 1). For the reasons discussed below, the court will deny the petition.

## I.  Factual and Procedural Background

The Pennsylvania Superior Court summarized the factual background of this case as follows:

> Melo met C.F., the mother of the M.F., the victim in this matter, in a bar in October of 2004. Two weeks later, C.F. moved in with Melo. At the time, M.F. and her siblings were in the physical custody of their father ("Father"). However, starting in January of 2005, M.F. and her siblings began visiting with C.F. and Melo on a more routine schedule every other week. In July of 2006 or 2007, C.F. broke up with Melo and moved out.

Several years later, Father confronted M.F. about a story he had learned about from M.F.'s friend, S.B. Father was concerned that the story indicated that Melo had raped M.F. Father also confronted C.F. about the story. M.F.'s caseworker contacted M.F. and indicated that the incident would be reported, and Detective Pelaia of the Penn Township Police Department was assigned to investigate the story.

During the investigation, M.F. revealed that during one of her visits to Melo's residence, Melo visited her at night while she was sleeping. At the time, Melo was wearing boxer shorts and a T-shirt. Melo proceeded to lay down beside M.F. in her bed, and eventually maneuvered himself on top of her. M.F. asked Melo to get off, to which Melo responded with a threat that if M.F. struggled, C.F. would "get it worse," while placing his hand over M.F.'s mouth.

Melo held M.F.'s hands above her head with one hand and used his other hand to pull down her shorts. Melo then laid back on top of M.F. and inserted his penis into her vagina. Melo continued to assault M.F. for no more than 10 minutes, and then departed from M.F.'s room. Before leaving, Melo warned M.F. that if she ever told anyone about the incident, she might not ever see her mother again.

On August 5, 2009, Melo was charged with crimes arising from this assault. On March 31, 2010, the Commonwealth filed a motion *in limine*, seeking the introduction of Melo's prior abuse of C.F. Melo's counsel filed a timely response, and a hearing on the Commonwealth's motion was held immediately prior to trial on April 12, 2010. At the conclusion of the hearing, the trial court granted the Commonwealth's motion.

A four day jury trial ensued, which concluded with a verdict finding Melo guilty of rape, statutory sexual assault, sexual assault, indecent assault without consent, indecent assault forcible compulsion, indecent assault person less than 16 years of age, and corruption of minors. On June 4, 2010, the Sexual Offender Assessment Board found that Melo did not meet the

criteria to be classified as a sexually violent predator. The trial court subsequently imposed an aggregate sentence of not less than 5 years to not more than 10 years imprisonment, with a consecutive term of five years' probation.

(Doc. 10-1 at 311-313, Commonwealth v. Melo, No. 1272 MDA 2010,

unpublished memorandum (Pa. Super. filed June 11, 2011)).

Following trial, Melo retained new counsel, Matthew R. Gover, Esquire ("Attorney Gover"), and the trial court permitted Attorney Kalasnik to withdraw as counsel. The trial court subsequently sentenced Melo to serve an aggregate term of five to ten years in prison. Attorney Gover timely filed a Notice of Appeal from Melo's judgment of sentence. On appeal, this Court affirmed the judgment of sentence, after which the Supreme Court of Pennsylvania denied allowance of appeal. **See Commonwealth v. Melo**, 31 A.3d 747 (Pa. Super. 2011) (unpublished memorandum), *appeal denied*, 30 A.3d 1192 (Pa. 2011).

In June 2012, Melo timely filed a *pro se* PCRA Petition. Following the filing of the PCRA Petition, the PCRA court appointed Melo counsel, Seamus Dubbs, Esquire ("PCRA counsel"), who filed an Amended PCRA Petition. Following a hearing held on June 27, 2013 (hereinafter referred to as "the PCRA hearing"), the PCR court entered an Order on October 31, 2013, dismissing Melo's PCRA Petition. In response, PCRA counsel timely filed a Notice of Appeal and court-ordered Pa.R.A.P. 1925(b) Concise Statement of Errors Complained of on Appeal.

In April 2014, Melo filed with this Court an Application requesting permission to proceed *pro se* on appeal, and for a remand for the PCRA court to conduct a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). This Court granted Melo's Application. After conducting a hearing (hereinafter referred to as "the **Grazier** hearing"), the PCRA court granted Melo permission to proceed *pro se*, finding that his decision was made knowingly, intelligently and voluntarily.

On appeal, Melo presents the following issues for our review:

I.     Was [Melo] denied due process of law during collateral review of the judgment of sentence?

II.    Did the [PCRA] court [] err[] when it found [that] trial counsel [was] not ineffective for failing to request a missing document instruction?

III.   Did the [PCRA] court [] err[] when it found [that] trial counsel [was] not ineffective [for] failing to object to prejudicial testimony?

IV.    Did the [PCRA] court [] err[] when it found [that] trial counsel [was] not ineffective [for] failing to request [a jury] instruction on prior inconsistent statements?

V.     Was [Melo] denied due process when the [trial] court [] held [that Melo's] claim [concerning the lack of a] prior bad acts instruction [was] waived?

(Doc. 10-1 at 527-528, Commonwealth v. Melo, No. 2161 MDA 2013, (Pa. Super. 2015) (unpublished memorandum).

In a Memorandum Opinion dated January 22, 2015, the Pennsylvania Superior Court affirmed the PCRA court's dismissal of Melo's PCRA petition. (Doc. 10-1 at 533, Commonwealth v. Melo, No. 2161 MDA 2013 (Pa. Super. 2015) (unpublished memorandum).  No petition for allowance of appeal to the Supreme Court of Pennsylvania was filed.

Thereafter, Melo timely filed the instant petition pursuant to 28 U.S.C. §2254.

## II.   28 U.S.C. § 2254 Standards of Review

A habeas corpus petition pursuant to 28 U.S.C. §2254 is the proper mechanism for a prisoner in custody pursuant to the judgment of a state court to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973). 28 U.S.C. §2254, provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> (b)(1) an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>> (A)  the applicant has exhausted the remedies available in the courts of the State;
>>
>> ...
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to or involved an  unreasonable application of, clearly established Federal law, as   determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in  the State court proceeding.

28 U.S.C. §2254.

Section 2254 clearly sets limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner. Cullen v. Pinholster, 563 U.S. 170, 181 (2011); Glenn v. Wynder, 743 F.3d 402, 406 (3d Cir. 2014). A federal court may consider such a petition only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254 (a). By limiting habeas relief to state conduct which violates "the Constitution or laws or treaties of the United States," §2254 places a high threshold on the courts.

Further, a federal habeas court may not consider a petitioner's claims of state law violations; review is limited to issues of federal law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Pulley v. Harris, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law."); Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982) ("If a state prisoner alleges no deprivation of a federal right, §2254 is simply inapplicable.").

## III.   **Grounds For Relief**

Melo seeks habeas relief on the following twelve claims:

1.  Violation of the Fourteenth Amendment right to a fair trial where the trial court erred in admitting evidence of prior abuse and said evidence was not relevant and inadmissible under Pennsylvania Rules of Evidence.

2.  Collateral review counsel was ineffective for failure to address the ineffectiveness of trial counsel.

3.  Trial counsel was ineffective for failure to properly prepare for trial and cross-examine witnesses.

4.  Trial counsel was ineffective for failing to request a missing witness instruction.

5.  Trial counsel was ineffective for failing to object to and/or request a mistrial for prosecutorial misconduct regarding Brady violation.

6.  Trial counsel was ineffective for failing to request a missing document instruction.

7.  Trial counsel was ineffective for failing to object to the prejudicial testimony by the victim's mother.

8.  Trial counsel was ineffective for failing to request instruction on prior inconsistent statements.

9.  Ineffective assistance of all prior counsel for failure to challenge the sufficiency of evidence on the basis of unreliable testimony and lack of a specified time.

10. All prior counsel was ineffective for failure to object to prosecutorial misconduct and request a mistrial.

11. Trial counsel was ineffective for failure to object to the testimony of Officer Pelaia.

12. Trial counsel was ineffective for failing to request a mistrial where jury did not hear testimony which may have been significant.

(Doc. 1, petition).

Subsequent to the filing of his petition, Melo filed a supplement, raising the following five issues:

I.      Was Petitioner denied due process of law during collateral review of the judgment of sentence?

II.     Did the State Court err when it found trial counsel not ineffective for failing to request a missing document instruction?

III.    Did the State Court err when it found trial counsel not ineffective in failing to object to prejudicial testimony?

IV.     Did the State Court err when it found trial counsel not ineffective in failing to request instruction on prior inconsistent statements?

V.      Was Petitioner denied due process when the court below held claim of prior bad acts instruction waived?

(Doc. 4, Supplement). These five issues were raised in Petitioner's appeal to the Pennsylvania Superior Court from the PCRA court's dismissal of Petitioner's PCRA petition. (Doc. 10-1 at 526). The Superior Court found that "[a]ll of Melo's issues raise claims of ineffectiveness of counsel (although he does not identify all of them as such in his Statement of Questions Presented) and addressed them as such. Id. Accordingly, this Court will address Petitioner's supplemental claims as ineffective assistance of counsel claims.

IV.   **Discussion**

A.   **Exhaustion and Procedural Default**

Absent unusual circumstances, a federal court should not entertain a petition for writ of habeas corpus, unless the petitioner has first satisfied the exhaustion requirement articulated in 28 U.S.C. §2254(b). Specifically, habeas relief "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The exhaustion requirement is grounded on principles of comity to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. See Werts v. Vaughn, 228 F.3d 178, 192 (3d Cir. 2000); Picard v. Connor, 404 U.S. 270, 275–76 (1971).

The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. §2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court. O'Sullivan, 526 U.S. at 845 (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those

9

claims are presented to the federal courts, . . .  state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process."); see also Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard, 404 U.S. at 275 (1971); Lambert v. Blackwell, 134 F.3d 506, 513 (3d Cir. 1997). This requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Picard, 404 U.S. at 278; see also McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (holding that petitioner must present both "factual and legal substance" of claim to state courts). Mere reliance of state and federal claims on the same constitutional provision does not render the two claims substantially equivalent. See Brown v. Cuyler, 669 F.2d 155 (3d Cir. 1982); Zicarelli v. Gray, 543 F.2d 466 (3d Cir. 1976).  Both the legal theory and the facts on which a federal claim rests must have been presented to the state courts. See Picard, 404 U.S. at 277; Brown, 669 F.2d at 158–61.

"When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' 28 U.S.C. §2254(b). In such cases, however, applicants are considered to

have procedurally defaulted their claims and federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse his or her default. See Coleman v. Thompson, 501 U.S. 722, 750 (1991)." McCandless, 172 F.3d at 260.

To demonstrate "cause" for a procedural default, a petitioner must point to some objective external factor which impeded his efforts to comply with the state's procedural rule. See Murray v. Carrier, 477 U.S. 478, 488 (1986). "Prejudice" will be satisfied only if he can demonstrate that the outcome of the state proceeding was "unreliable or fundamentally unfair" as a result of a violation of federal law. See Lockhart v. Fretwell, 506 U.S. 364, 366 (1993).

Alternatively, if a petitioner demonstrates that a "constitutional violation has probably resulted in the conviction of one who is actually innocent," Murray, 477 U.S. at 496, then a federal court can excuse the procedural default and review the claim in order to prevent a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Wenger v. Frank, 266 F.3d 218, 224 (3d Cir. 2001). The miscarriage of justice exception applies only in extraordinary cases, and actual innocence means factual innocence, not legal insufficiency. Bousley v. United States, 523 U.S. 614,

623 (1998); Murray, 477 U.S. at 496. A petitioner establishes actual innocence by asserting "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial," showing that no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004).

    1. Petitioner's Claim 1 – Fourteenth Amendment Right to Fair Trial

Petitioner's first claim for relief states a "violation of Fourteenth Amendment right to a fair trial where trial court erred in admitting evidence of prior abuse and said evidence was not relevant and inadmissible under Pennsylvania Rules of Evidence." (Doc. 1 at 3).

In his direct appeal brief, Petitioner devoted four pages to the issue that the trial court abused its discretion in admitting "unduly prejudicial" prior bad act testimony. (Doc. 10-1 at 250-254). In setting forth the rationale for barring evidence of prior criminal activity, reciting the circumstances under which such testimony can be admitted, and noting the prohibition on using such evidence for impeachment purposes, he wholly relied on state case law. Id. The words "due process" do not appear in the argument, there is no reference to the Fourteenth Amendment, and neither the United States Constitution, nor any judicial decision based on the federal Constitution, are

mentioned in either appellate brief. Id. And he acknowledges that "the Rules prohibit any evidence regarding prior bad acts to be admitted for the purpose of show[ing] action in conformity therewith.' Pa. R.E. 404(b)(1)." (Doc. 10-1 at 250-254). Moreover, the state court understood the arguments concerning this evidence to be based on the evidentiary principles set forth in Rules 404(b)(1) and (3) of the Pennsylvania Rules of Evidence and Pennsylvania law.  (Doc. 10-1 at 314-318).

If a petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process, he must say so, not only in federal court, but in state court. Duncan, 513 U.S. at 366. Because Petitioner failed to invoke the federal due process guarantee in the state court proceedings, his current federal due process claim was not fairly presented to the Pennsylvania courts. There is no question that the Pennsylvania courts would not entertain the claim at this juncture. Thus, the claim is procedurally defaulted. See McCandless, 172 F.3d at 260. Petitioner does not allege cause or prejudice. Nor does he allege that lack of review by this court will constitute a fundamental miscarriage of justice. Consequently, habeas review of this claim is foreclosed.

Additionally, 'federal courts sitting in habeas do not review state courts' application of state evidence law.' Jones v. Cain, 600 F.3d 527 (5th Cir.

13

2010); Sawyer v. Smith, 497 U.S. 227, 239 (1990) quoting Dugger v. Adams, 489 U.S. 401, 409 (1989) (finding that federal courts have decided that "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution").

2. Petitioner's Claims 2-5, 9-12 – Ineffective Assistance of Counsel

Respondent contends that several of Petitioner's claims are waived as Petitioner has failed to exhaust these claims and they are now procedurally defaulted as Petitioner would not be able to raise them in state court. (Doc. 10 at 11). The Court agrees.

A review of the record reveals that the following claims have not been properly exhausted through state court review:

-Ineffective assistance of PCRA counsel.

-Ineffective assistance of trial counsel for failing to properly prepare for trial and cross-examine witnesses.

-Ineffective assistance of trial counsel for failing to object and/or request a mistrial based for prosecutorial misconduct regarding Brady violation.

-Ineffective assistance for failing to request a missing witness instruction.

-Ineffective assistance of all prior counsel for not objecting to statements made by the prosecutor concerning the date Petitioner raped the victim and not requesting a mistrial.

-Ineffective assistance of all prior counsel for failure to challenge the sufficiency of evidence on the basis of unreliable testimony and lack of a specified time.

-All prior counsel was ineffective for failure to object to prosecutorial misconduct and request a mistrial.

-Ineffective assistance of trial counsel for not objecting to the testimony of Officer Pelaia.

-Ineffective assistance of trial counsel not requesting a mistrial based on evidence that the jury did not hear.

Petitioner raised the issue of his PCRA counsel's ineffectiveness for the first time on his appeal from the denial of his PCRA. The remaining issues were raised for the first time in Petitioner's instant federal habeas petition. Accordingly, the state courts have not had an opportunity to review these claims. Therefore, these claims have not been properly exhausted. There is no question that the Pennsylvania courts would not entertain the claims at this juncture. Consequently, the claims are procedurally defaulted. See McCandless, 172 F.3d at 260.

Petitioner acknowledges that the instant claims have never been presented to any court for review. (Doc. 13). However, he seeks to raise them under the narrow exception to procedural default, announced by the Supreme Court in Martinez v. Ryan, 566 U.S. 1 (2012). Id.

Martinez recognized a "narrow exception" to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a

procedural default, holding, "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. To successfully invoke the Martinez exception, a petitioner must satisfy two factors: that the underlying, otherwise defaulted, claim of ineffective assistance of trial counsel is "substantial," meaning that it has "some merit," id. at 14; and that petitioner had "no counsel" or "ineffective" counsel during the initial phase of the state collateral review proceeding. Id. at 17; see also Glenn v. Wynder, 743 F.3d 402, 410 (3d Cir. 2014). Both prongs of Martinez implicate the controlling standard for ineffectiveness claims first stated in Strickland v. Washington: (1) that counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. 466 U.S. 668, 687 (1984).

Petitioner's claim of PCRA counsel ineffectiveness cannot establish cause under Martinez because it is, itself, procedurally defaulted. Petitioner alleged that PCRA counsel was ineffective in PCRA proceedings, and the Superior Court found this claim waived pursuant to independent and adequate state rules. The Superior Court found Petitioner's claim that PCRA counsel was ineffective for failing to raise trial counsel's ineffectiveness waived because Petitioner "never raised his claim of PCRA counsel's

ineffectiveness prior to the dismissal of his PCRA petition and PCRA counsel's filing of a Notice of Appeal and Rule 1925(b) Concise Statement on Melo's behalf." (Doc. 10-1 at 530). Thus, Petitioner improperly raised it for the first time on appeal. See, e.g., Smith v. DiGuglielmo, No. 06-2918, 2018 WL 1740528, at *7 (E.D. Pa. Apr. 10, 2018) (rule that PCRA counsel ineffectiveness claim cannot be raised for the first time on appeal is independent and adequate). Because Petitioner's PCRA counsel ineffectiveness claim is procedurally defaulted, it cannot serve as cause. See Edwards, 529 U.S. at 450-54; Evans v. Garman, No. 20-0811, 2022 WL 452409 at *2 (M.D. Pa. Feb. 14, 2022) (finding that petitioner failed to establish cause under Martinez when his PCRA counsel ineffectiveness claim was procedurally defaulted); Turner v. Coleman, No. 13-1787, 2016 WL 3999837, at *10 (W.D. Pa. July 26, 2016) (petitioner failed to establish cause under Martinez when PCRA counsel ineffectiveness claim was procedurally defaulted); Galloway v. Wenerowicz, No. 13-956, 2016 WL 2894476, at *10 (W.D. Pa. Apr. 20, 2016), report and recommendation adopted, No. 13-956, 2016 WL 2866765 (W.D. Pa. May 17, 2016) (same). Accordingly, the Court will deny Petitioner's unexhausted claims of trial counsel ineffectiveness as procedurally defaulted because Petitioner failed to establish cause for the procedural default.

17

**B.** **Merits of Federal Claims**

As set forth supra, under the AEDPA, federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d). "In considering a §2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." Simmons v. Beard, 590 F.3d 223, 231–32 (3d Cir. 2009) (citing Bond v. Beard, 539 F.3d 256, 289–90 (3d Cir. 2008) ). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it'." Burnside v. Wenerowicz, 525 F. App'x 135, 138 (3d Cir. 2013). However, when the highest state court that considered the claim does not issue a reasoned opinion, we "look through" that decision to the last reasoned opinion of the state courts, and we apply a rebuttable presumption that the higher court

18

adopted the same reasoning as that set forth by the lower court. Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction," Greene v. Fisher, 565 U.S. 34, 38 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen, 563 U.S. at 181(internal quotation marks and citation omitted). The burden is on Petition to prove entitlement to the writ. Id.

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

"[A] state court decision reflects an 'unreasonable application of such law' only 'where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents,' a standard the Supreme Court has advised is 'difficult to meet' because it was

'meant to be.' [Harrison v.] Richter, 562 U.S. 86, [ ] 102, 131 S.Ct. 770. As the Supreme Court has cautioned, an 'unreasonable application of federal law is different from an incorrect application of federal law,' Richter, 562 U.S. at 101, 131 S.Ct. 770 (quoting Williams, 529 U.S. at 410, 120 S.Ct. 1495), and whether we 'conclude[ ] in [our] independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly' is irrelevant, as AEDPA sets a higher bar. Williams, 529 U.S. at 411, 120 S.Ct. 1495." Mathias v. Superintendent Frackville SCI, 876 F.3d 462, 476 (3d Cir. 2017). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

Finally, Section 2254(e) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1).

**C.** __Ineffective Assistance of Counsel__

Petitioner raises a multitude of ineffective assistance of counsel claims.

The clearly established ineffective assistance of counsel standard as

determined by the Supreme Court of the United States is as follows:

> Ineffective assistance of counsel claims are "governed by the familiar two-prong test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." Shelton v. Carroll, 464 F.3d 423, 438 (3d Cir. 2006) (citing Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)). For AEDPA purposes, the Strickland test qualifies as "clearly established Federal law, as determined by the Supreme Court." Williams, 529 U.S. at 391, 120 S.Ct. 1495. Under Strickland, a habeas petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. 466 U.S. at 687, 104 S.Ct. 2052. For the deficient performance prong, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Id. at 688, 104 S.Ct. 2052. This review is deferential:
>
> > A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance....
>
> Id. at 689, 104 S.Ct. 2052
>
> > Not every "error by counsel, even if professionally unreasonable, ... warrant[s] setting aside the judgment of a criminal proceeding." Id. at 691, 104 S.Ct. 2052.

"Even if a defendant shows that particular errors of counsel were unreasonable, ... the defendant must show that they actually had an adverse effect on the defense"; in other words, the habeas petitioner must show that he was prejudiced by counsel's deficient performance. Id. at 693, 104 S.Ct. 2052. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. 2052.

In assessing an ineffective assistance of counsel claim, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding.... In every case the court should be concerned with whether ... the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696, 104 S.Ct. 2052.

Rainey v. Varner, 603 F.3d 189, 197–98 (3d Cir. 2010).

When the state court has decided the claim on the merits, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold'." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Id.

The Superior Court stated that the proper standard governing ineffective assistance of counsel claims requires "petitioner pleads and proves all of the following (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a difference outcome if not for counsel's error. Commonwealth v. Franklin, 990 A.2d 795, 797 (Pa. Super. 2010)." (Doc. 10-1, p. 4). The Third Circuit has specifically held that the very ineffectiveness assistance of counsel test relied upon by the Superior Court in this matter is not contrary to the Supreme Court's Strickland standard. See Werts v. Vaughn, 228 F.3d 178, 204 (3d Cir. 2000). Thus, we find that the Superior Court's decision is not contrary to Strickland.

Below, we consider whether the state courts' disposition of Petitioner's exhausted ineffective assistance of counsel claims involved an unreasonable application of Strickland or resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state courts.

### a. Trial counsel was ineffective for failing to request a missing document instruction.

Petitioner claims that "[t]he alleged notebook was central to the Prosecutions' case in this matter, since the only individuals who seen the

entry alleging the incident was the victim and non-testifying witness Michael

J. Figlioli," and "[w]ith this being a circumstantial case resting on the

credibility of the evidence presented, not to request a missing document

instruction under these circumstances was unreasonable and could not have

been a tactical decision to effectuate Petitioner's best interest." (Doc. 1 at

17).

The Superior Court, agreed with PCRA court's sound rationale and

determination and adopted the PCRA court's decision as its own. (Doc. 10-

1 at 531). The PCRA court found the following:

> At the June 27, 2013 hearing, the Defendant opined that there
> was no missing document instruction; however, the Defendant
> went on to testify that he remembered Attorney Kalasnik crossing
> witnesses about the notebook and calling the notebook's
> existence into doubt during closing. In describing the notebook,
> Attorney Kalasnik said that it supposedly claimed relevant
> information and that, while the notebook was never produced,
> the victim's father and friends were supposed to have knowledge
> of the notebook and they testified. Attorney Kalasnik generally
> recalled inconsistency between witnesses as to what information
> the notebook contained *and* he was also satisfied with how he
> addressed the notebook on cross. Attorney Kalasnik also
> testified on direct that he does not believe a missing document
> instruction would have helped because the defense was unable
> to produce sufficient reasons for the jury to disbelieve the
> accuser. However, on cross, Attorney Kalasnik stated that it
> *could* have helped if a missing document instruction were to have
> been given.
>
> It seems axiomatic that the claim underlying the ineffectiveness
> claim has arguable merit as to a missing document instruction
> because the document and its absence seem to have instigated

a lot of questioning and closing remarks. The second prong of the ineffectiveness standard, whether counsels' actions lacked any reasonable basis, is less sure.

We are instructed to determine whether "'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" Cox at 678. Here, would having had the missing document instruction have proven substantially more successful than not having the jury hear such an instruction? Attorney Kalasnik testified that neither he nor the Defendant could produce sufficient evidence to discredit the accuser and that fact, not a lack of the missing witness instruction, was the real problem the Defendant faced. It seems to this Court as though any gain from the missing document instruction would have been minimal at best. As such, it does not appear as though Attorney Kalasnik's action lacked any reasonable basis. The chosen course of not requesting the instruction does not show Attorney Kalasnik to have been ineffective. If however, Attorney Kalasnik's actions were unreasonable, we proceed to the third prong of the ineffectiveness standard.

The third prong asks whether counsel's actions resulted in prejudice to the petitioner. Again, "[p]rejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." Pierce at 213. The jury heard defense counsel call the contents and very existence of the notebook into question repeatedly during cross and in his closing. The jury was on notice that the fidelity and existence of the notebook was questioned by the Defendant. It does not follow that there is a reasonable probability that the outcome of the proceedings would have been different had the missing document instruction been given. This Court finds that the Defendant did not demonstrate that counsel's actions resulted in prejudice. Attorney Kalasnik was not ineffective for not requesting the missing document instruction.

(Doc. 10-1 at 385-387) (emphasis in original).

It is evident that the PCRA court reviewed counsel's actions and concluded that Petitioner's claim lacked arguable merit. The decision is a reasonable application of the arguable merit prong of Strickland and constitutes an objectively reasonable determination of the facts in light of the evidence presented to the state court.  Petitioner is not entitled to relief on this claim.

### b. Trial counsel was ineffective for failing to object to prejudicial testimony by the victim's mother.

Petitioner claims that trial counsel was ineffective for failing to "object to the prejudicial prior bad act testimony of Christian Figlioli regarding alleged abuse committed by [Petitioner], in violation of the trial court's prohibition against such testimony." (Doc. 1 at 18).

The Superior Court again adopted the PCRA court's "rationale and determination" (Doc. 10-1 at 532), which found the following:

> The second issue that must be dealt with is whether Attorney Kalasnik was ineffective for not having objected to Christian Figlioli's testimony regarding abuse she suffered at the hands of the Defendant, which went beyond the Court's prohibition on such testimony.

> During the June 27, 2013 hearing, the Defendant stated that he could not recall whether counsel discussed with him the propriety of admitting Christian Figlioli's testimony that the Defendant had once pinned her to a wall by her neck. The Defendant did not remember Attorney Kalasnik asking Christian Figlioli, the Defendant's ex-girlfriend and the accuser's mother, questions about the Defendant that were designed to impeach Christian.

Specifically, Attorney Kalasnik testified that he queried Christian as to why she never followed up to the police regarding the Defendant's alleged abuse of her. Moreover, Attorney Kalasnik accused Christian of improper motives by suggesting she tried to extort money from the Defendant and that Christian was angry at having been kicked out of the Defendant's home. Attorney Kalasnik could not recall why he did not object to the choking incident allegations coming in, which violated a judicial order that only prior bad acts the victim had witnessed were to come in. That said, Attorney Kalasnik stated that it is sometimes best to not object so as not to draw attention to adverse information and that at a later point he attempted to diminish the alleged assault.

There is no doubt that the claim underlying the ineffectiveness claim has arguable merit as to the alleged choking incident because that occurrence was to have been kept out by order of the Court. The second prong of the ineffectiveness standard, whether counsel's actions lacked any reasonable basis, is absent here. Again, we are instruction to determine whether "'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" Cox, 983 A.2d 666, 678 (Pa. 2009). Here, the objectionable testimony was stated in open court and in violation of the preexisting moratorium established by the Court. In commonly used court vernacular, testimony once uttered before a jury is akin to a bell, which cannot be unrung. The Court is compelled to ask what an objection would have accomplished. Short of a mistrial, the jury could only have been ordered that the testimony was stricken and not to be considered. Attorney Kalasnik's testimony that it is sometimes best to let harmful statements to and to minimize them later is a course of action that this Court finds is equally likely, or better, of succeeding than asking for a curative instruction. As to this charge, it does not appear as though Attorney Kalasnik's actions lacked any reasonable basis. The chosen course of not objecting does not demonstrate that Attorney Kalasnik was ineffective. If, however, Attorney Kalasnik's actions were unreasonable, we proceed to the third prong of the ineffectiveness standard.

The third prong requires the petitioner to demonstrate that counsel's actions resulted in prejudice to petitioner. Again, "[p]rejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." Pierce, 786 A.2d 203, 213 (Pa. 2001). The jury heard defense counsel question the veracity of Christian's account of the alleged assault and accuse her of improper motives on cross. The jury heard a stronger rebuke of the testimony from Attorney Kalasnik than what the Court could have offered following an objection. It, therefore, does not follow that there is a reasonable probability that the outcome of the proceedings would have been different had the [prejudicial testimony] instruction been given. This Court finds that Attorney Kalasnik was not ineffective for failing to object to Christian Figlioli's testimony regarding incidents of abuse.

(Doc. 10-1 at 387-389).

The state court reasonably applied the <u>Strickland</u> standard in finding that counsel's strategy was reasonably calculated to advance Petitioner's interests, and the underlying claim lacked arguable merit. Petitioner is not entitled to relief on this claim.

### c. Trial counsel was ineffective for failing to request prior inconsistent statements instruction.

Petitioner claims that "[t]he statements given by the victim in this matter were continuously inconsistent," in that the victim's statement initially alleged the incident "occurred two years prior" and "[i]n a subsequent statement, it was to have occurred three years prior" and then "at the preliminary hearing it was to have occurred four years prior." (Doc. 1 at 19).

Finding that the PCRA court's rationale and determination was "supported by the record," the Pennsylvania Superior Court agreed and affirmed on the PCRA court's findings, which are as follows:

> In the hearing on June 27, 2013, the Defendant stated that he had no memory of prior inconsistent statements of the victim being raised at trial or on appeal. Attorney Kalasnik testified that he had told the Defendant that this was a he-said-she-said case in which the defense had to give the jury a reason to believe the victim and her parents' credibility. To that end, Attorney Kalasnik urged the Defendant to wrack his brain for reasons why the victim or her parents would accuse him. Attorney Kalasnik also testified that he could not remember is the Court gave witness credibility or inconsistent statements instructions. A review of the trial transcript reveals that the Court did give a witness credibility instruction. (N.T., 4/14/10 at 359).
>
> Attorney Kalasnik's June 27, 2013 testimony included that the jury, at one point came back deadlocked. Perhaps the instruction the Defendant believes should have been requested would have aided the defense in such a close call situation. As such, it seems that the claim underlying the ineffectiveness claim has arguable merit as to not requesting an instruction on prior inconsistent statements by the victim. The second prong of the ineffectiveness standard, whether counsel's actions lacked any reasonable basis, is less sure. We are instructed to determine whether "'an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" Cox, 983 A.2d 666, 678 (Pa. 2009). Here, would having had the prior inconsistent statements instructions have proven substantially more successful than not having the jury hear such an instruction? The Court gave the standard witness credibility instruction. When combined with Attorney Kalasnik's cross of the victim and closing statement, the jury was well aware that the victim's testimony was in question. And, ultimately, the point of a prior inconsistent statements instruction is to highlight witness credibility. Any gain from a prior inconsistent statements instruction would have been small and certainly would not have

risen to the level of a substantially greater potential for success. As such, it does not appear as though Attorney Kalasnik's actions lacked any reasonable basis. The chosen course of not requesting the instruction does not show Attorney Kalasnik to have been ineffective. If, however, Attorney Kalasnik's actions were unreasonable, we proceed to the third prong of the ineffectiveness standard.

The third prong asks whether counsel's actions resulted in prejudice to the petitioner. Again, "[p]rejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." Pierce at 213. The jury heard defense counsel cross the victim and make a closing argument premised upon perceived inconsistencies. The jury was aware that the victim's statements were in question. It does not follow that there is a reasonable probability that the outcome of the proceedings would have been different had the prior inconsistent statements instruction been given. This Court finds that the Defendant did not demonstrate that counsel's actions resulted in prejudice. Attorney Kalasnik was not ineffective for not requesting the [prior inconsistent statements] instruction.

(Doc. 10-1 at 392-394).

This Court finds that the state court reasonably applied the Strickland standard in finding that trial counsel had a reasonable basis for not asking for a specific instruction on inconsistent statements and thus, finding the underlying claim lacked arguable merit. Petitioner is not entitled to relief on this claim.

## V.   <u>Conclusion</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 will be denied.

## VI.   <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. §2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. §2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. §2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Petitioner from appealing the Order denying his petition so long as he seeks, and obtains, a certificate of appealability from the Third Circuit Court of Appeals. See Fed. R. App. P. 22(b)(1).

A separate Order will enter.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: June 27, 2022**
15-1272-01